Filed 4/24/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B289639 |
| Plaintiff and Respondent, | (Super. Ct. No. 1499126) (Santa Barbara County) |
| v. | |
| JESUS EFRAIN MARTINEZ, | |
| Defendant and Appellant. | |

       Sometimes a witness wears two hats: that of a witness, and that of an accomplice. California law permits placing the burden to prove such a witness's accomplice status on a defendant. (*People v. Tewksbury* (1976) 15 Cal.3d 953, 963-968 (*Tewksbury*).) This is because, in general, whether a witness is an accomplice is not an element of the defendant's crimes. (*Id.* at p. 965.) But certain crimes, such as sexual penetration in concert and rape in concert, require proof that the defendant acted with an accomplice. (See Pen. Code,[1] § 264.1, subd. (a).) Because the witness's accomplice status is an element of these crimes, the

---

      [1] All further unlabeled statutory references are to the Penal Code.

prosecution must bear the burden to prove that status beyond a reasonable doubt. (See *Tewksbury*, at pp. 963-964.) The portion of CALCRIM No. 334 that instructs the jury otherwise—i.e., that tells jurors that the burden is on the defendant to prove that it is more likely than not that the witness was an accomplice—should be omitted when the defendant is charged with in concert crimes.

Jesus Efrain Martinez appeals from the judgment after a jury convicted him of sexual penetration in concert (§§ 264.1, subd. (a)/289, subd. (a)(1)(A)) and rape in concert (§§ 264.1, subd. (a)/261, subd. (a)(2)). The trial court sentenced him to 18 years in state prison. Martinez contends the judgment should be reversed because the jury instructions lowered the prosecution's burden of proof. We affirm.

FACTUAL AND PROCEDURAL HISTORY

M.C. lived in Santa Barbara. In February 2016, M.C. went to a party. When she arrived, about 10 to 15 people were there, including Martinez and Bailey Smith. M.C. had met both men previously.

Around 4:00 a.m., people started to leave the party. M.C. invited Martinez and Smith back to her apartment. Once they arrived, the trio drank liquor and played "Truth or Dare." During the game, they took "body shots"[2] and dared each other to remove layers of clothing.

M.C. grew uncomfortable, so she suggested they all go out to the patio. M.C. put on sweatpants and gave each man a cigarette. As they walked to the patio, Smith and Martinez grabbed M.C. and moved her to a bed. Smith lay on the bed, with

---

[2] A "body shot" is when one person drinks alcohol out of another person's navel.

2

M.C. above him. Martinez stood behind them. M.C. struggled to get free as she straddled Smith.

Martinez pulled down M.C.'s sweatpants and told Smith to "hold her down." M.C. told them to stop. Smith held M.C. and told Martinez to "go at it." Martinez penetrated her vagina with his fingers and penis, and bit her buttocks. Smith also put his fingers in M.C.'s vagina. He put his hand over M.C.'s mouth when she tried to scream.

M.C.'s vagina, hips, and arms were in pain. She realized she could not get away from the men so she gave up fighting. The assault ended when Martinez went to the bathroom with a bloody nose.

M.C. asked Smith if she could go to her car to get a pack of cigarettes. When he agreed, she went outside, got into her car, and drove to a friend's house. She cried the whole way.

M.C. called 911 from her friend's house. She described Martinez and Smith, and told the operator she had scratched Smith and bit his shoulder. M.C. appeared distraught when police arrived. She told the responding officer she had been raped by two men at her apartment. She described Martinez and Smith. The officer transmitted their descriptions and M.C.'s apartment location to other officers.

Several officers responded to M.C.'s apartment. They found Martinez and Smith asleep inside. Smith had scratches on his face, neck, and chest, and circular marks on his shoulder and chest. Martinez had blood on his chin and neck. Both men appeared to be intoxicated.

When an officer asked Smith why there were scratches on his body, he replied, "She likes to scratch." Martinez told the police, "We—we really didn't do nothin'. I'm still

3

questionin' why you guys are here." A detective replied they were trying to figure out why the men were in an apartment that was not theirs. Smith said, "'Cause we were tryin' to work a threesome with like a beezy."

M.C. identified Martinez and Smith as the men who raped her. Police arrested them. Smith said, "Bitch wasn't worth it. She was square as fuck." In the patrol car Smith denied that he had sex with M.C.

A detective interviewed Martinez at the police station. Martinez denied that he had sex with M.C. He could not remember her or Smith's name. The detective collected DNA from Martinez's body, including from his penis. Before the detective swabbed it, Martinez wiped his penis with his hand.

M.C.'s DNA was under Martinez's fingernails. It was consistent with digital penetration. Her DNA was also on his penis. The high amount of M.C.'s DNA found on Martinez's penis indicated that it came from body fluids. It was consistent with vaginal intercourse.

The same detective interviewed Smith. Smith told the detective that he went to the apartment of "some beezy that, uh, [he] and the other homie met." He said he did not remember Martinez's name, and explained that he did not "want to know somebody's name when [he was] trying to work a threesome."

Smith said he played a drinking game with M.C. and Martinez. At one point they were all naked. He put his fingers in M.C.'s vagina, but did not have sex with her. M.C. left the bite marks and scratches on his body. Her DNA was on his fingers and under his fingernails.

Smith claimed he did not know why M.C. called the police.  He believed she enjoyed herself.  He did not remember her saying "no" or "stop" at any point.

After the detective told him the encounter appeared nonconsensual, Smith "start[ed] to question everything."  He could not think of a reason M.C. would lie.  He said he probably stopped participating "if it was like rapey" or "if [M.C.] did say 'no.'"

Police left Martinez and Smith in a room together as they awaited transport to jail.  Smith said, "[W]ell, I guess we raped that girl."  Martinez replied, "I know, right?"  Both men said they did not remember the incident.  Martinez accused M.C. of setting them up.  Smith said he was "pretty sure she never said 'no' or 'stop.'"  Martinez agreed.

Martinez called his brother several times from jail.  Martinez said he had been accused of rape but that he "had full consent" and that "the chick was super down" to have a threesome.  Smith held her down while he "fuck[ed] her from the back."

*Trial testimony*

Smith pled guilty to rape in concert, and agreed to testify against Martinez in exchange for a five-year prison sentence.  Smith testified that he and Martinez went to M.C.'s apartment, where they played "Truth or Dare."  The sexual encounter began during the game.  Smith bit M.C.'s buttocks and penetrated her vagina with his fingers.  Martinez raped M.C. while Smith held her on top of him.  M.C. bit and scratched Smith as he held her down.

Martinez testified in his own defense.  He said that he and Smith went to M.C.'s apartment after a party and played

"Truth or Dare." They all removed items of clothing and took body shots off each other. Both he and Smith kissed M.C.

Martinez said M.C. straddled Smith on the bed. Martinez touched her back, buttocks, and vagina. M.C. did not tell him to stop. Martinez attempted to penetrate M.C.'s vagina but could not.

Martinez got a bloody nose, so he went to the restroom to clean up. When he returned, Smith and M.C. were "still hooking up." He went to sleep, and awoke to the police shaking him.

Martinez denied that he raped M.C. He said he and Smith were being sarcastic when they talked about having raped her. He told his brother that he had sex with M.C. so other inmates would not think he could not get an erection. He admitted that he lied about parts of the incident to police, Smith, his mother, and his brother.

*Jury instructions and closing arguments*

At the conclusion of testimony, the prosecutor requested that the trial court provide CALCRIM No. 335, which instructs the jury that the testimony of a witness who is an accomplice as a matter of law must be corroborated and should be viewed with caution. Martinez objected to the instruction. He also objected to CALCRIM No. 334, which lets the jury decide whether a testifying witness was an accomplice. Martinez thought it "bizarre" that he had to prove Smith was an accomplice, which he had "zero interest" in doing.

The trial court overruled Martinez's objection and instructed the jury with CALCRIM No. 334. The instruction defines an accomplice as a person "subject to prosecution for the identical crime charged against the defendant" as either a

6

principal or an aider and abettor. The instruction told the jury it was Martinez's burden to prove, by a preponderance of the evidence, that Smith was his accomplice. If he fulfilled that burden, the jury could not convict him based on Smith's testimony unless it was supported by other evidence. The instruction also told jurors that they should view Smith's testimony with caution.

The trial court instructed the jury on the elements of rape in concert. (See CALCRIM No. 1001.) The instruction told the jury that, to find Martinez guilty, the prosecution had to prove beyond a reasonable doubt that he "personally committed forcible rape" and "voluntarily acted with someone else who aided and abetted its commission." The court also instructed the jury on the elements of sexual penetration in concert. (See CALCRIM No. 1046.) This instruction told the jury the prosecution had to prove beyond a reasonable doubt that Martinez either (1) "personally committed sexual penetration" and "voluntarily acted with someone else who aided and abetted its commission," or (2) "voluntarily aided and abetted someone else who personally committed sexual penetration."

The trial court also provided several instructions on the prosecution's burden to prove the elements of the charged crimes beyond a reasonable doubt. (See CALCRIM Nos. 220, 224, 225, 359, 401, 3517.) It told the jury that the testimony of a single witness, other than Smith, could prove any fact. (See CALCRIM No. 301.)

During closing arguments, counsel for Martinez argued that Smith acted alone. She argued that Smith could not be Martinez's accomplice because Martinez committed no crime. She said the jury should ignore CALCRIM No. 334 and treat

7

Smith like any other witness. "We're not asking to prove [that [Smith is] accomplice. He is not." She also argued that Smith was not credible.

The prosecutor argued that Smith was an accomplice, and that there was "a ton" of corroborating evidence, including M.C.'s testimony, Martinez's lies, DNA, and the injuries to Martinez and Smith. The prosecutor did not discuss Martinez's burden to prove Smith was an accomplice or suggest that Martinez was guilty based on Smith's testimony alone. He reiterated that he had the burden to prove all of the elements of the charged crimes beyond a reasonable doubt.

DISCUSSION

Martinez contends the trial court's use of CALCRIM No. 334—which instructed jurors that he had to prove, by a preponderance of the evidence, that Smith was an accomplice—impermissibly lowered the prosecution's burden to prove the charges against him. He claims the instruction forced him to either help the prosecution prove an element of the charges or forgo the benefits of that instruction—i.e., that Smith's testimony required corroboration and should be viewed with caution. We agree that the instruction was improperly given, but conclude that there is no reasonable likelihood that the jury misapplied it given the circumstances of this case.

*Standard of review*

We independently review whether the trial court accurately instructed the jury. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) We review the allegedly erroneous instruction in the context of the evidence presented at trial. (*People v. Crosier* (1974) 41 Cal.App.3d 712, 724; see also *People v. Morine* (1903) 138 Cal. 626, 631 ["Instructions are given to juries to be applied

8

to the facts as they may find them"].)  We review the instructions as a whole (*People v. Lucas* (2014) 60 Cal.4th 153, 282, disapproved on another ground by *People v. Romero and Self* (2015) 62 Cal.4th 1, 53, fn. 19), with the assumption that jurors are "capable of understanding and correlating" all of the instructions given (*People v. Mills* (1991) 1 Cal.App.4th 898, 918).

We give the instructions a reasonable, rather than technical, meaning (*People v. Kainzrants* (1996) 45 Cal.App.4th 1068, 1074), and interpret them to support the judgment if possible (*People v. Laskiewicz* (1986) 176 Cal.App.3d 1254, 1258). We also consider the arguments of counsel to assess the instructions' impacts on the jury.  (*People v. Young* (2005) 34 Cal.4th 1149, 1202 (*Young*).)  Our duty is to determine "whether there is a reasonable likelihood that the jury misunderstood and misapplied the [allegedly erroneous] instruction."  (*People v. Mayfield* (1997) 14 Cal.4th 668, 777, abrogated on another ground by *People v. Scott* (2015) 61 Cal.4th 363, 390, fn. 2.)

*CALCRIM No. 334*

There was no such reasonable likelihood here. Section 1111, on which CALCRIM No. 334 is based, precludes a defendant's conviction based on the testimony of an accomplice unless that testimony is corroborated by independent evidence. It defines an "accomplice" as "one who is liable to prosecution for the identical offense charged against the defendant."  Thus, for purposes of section 1111 and CALCRIM No. 334, an accomplice must either perpetrate an offense or aid and abet its commission. (*People v. Avila* (2006) 38 Cal.4th 491, 564; see § 31.)

California law permits placing the burden to prove the accomplice status of a witness on a defendant.  (*Tewksbury*, *supra*, 15 Cal.3d at pp. 963-968.)  This is because whether a

9

witness is an accomplice is collateral to the defendant's guilt or innocence. (*Id*. at pp. 964-968.) It is an issue that need not be established to prove an element of the defendant's crime. (*Id*. at p. 965.) CALCRIM No. 334's instruction that a defendant must prove, by a preponderance of the evidence, a witness's status as an accomplice thus, in general, correctly states the law. (*People v. Frye* (1998) 18 Cal.4th 894, 967-969 (*Frye*) [upholding predecessor to CALCRIM No. 334], disapproved on another ground by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

But certain crimes, such as sexual penetration in concert and rape in concert, require proof that the defendant acted with an accomplice. To be convicted of one of these crimes, the defendant must either perpetrate the underlying offense and voluntarily act with a specified aider and abettor to do so, or voluntarily aid and abet a specified perpetrator in committing the offense. (§ 264.1, subd. (a).) In other words, a defendant can commit sexual penetration in concert or rape in concert if—and only if—they act with an accomplice. (*Ibid*.) Because it is an element of these offenses, the prosecution must bear the burden to prove the accomplice's status beyond a reasonable doubt. (See *Tewksbury*, *supra*, 15 Cal.3d at pp. 963-964.) In these circumstances, "the accused need only raise a reasonable doubt" as to whether the crimes were committed with an accomplice. (*Id*. at p. 963.)

*Likelihood the jury misapplied the instructions*

Here, however, the trial court instructed the jury that Martinez had the burden to prove that Smith was an accomplice. Martinez argues that fulfilling that burden forced him to help the prosecution prove an element of the charges against him. But if he chose not to fulfill it, Smith's testimony could be treated like

10

any other witness's. Either way, he argues, the instruction created a """reasonable likelihood"" that the jury applied [it] in a way that relieved the [prosecution] of its burden of proving every element of the [charged crimes] beyond a reasonable doubt," and violated his due process rights. (*Waddington v. Sarausad* (2009) 555 U.S. 179, 190-191.)

We agree that the instruction, considered alone, appears to lower the prosecution's burden of proof with respect to the crimes charged here. Martinez should not have been forced to choose between two potentially harmful options. The court should have omitted the portion of CALCRIM No. 334 that told the jury that Martinez had the burden to prove Smith's status as an accomplice.

*Frye*, *supra*, 18 Cal.4th 894, on which the Attorney General relies, does not hold otherwise. In *Frye*, our Supreme Court rejected the defendant's challenge to the instruction that he had to prove that a prosecution witness was an accomplice. (*Id.* at pp. 967-969.) But the *Frye* defendant was charged with murder, robbery, burglary, and the unlawful driving or taking of a vehicle. (*Id.* at pp. 930-931.) Acting with an accomplice is not an element of any of those crimes. (See §§ 187, subd. (a) [murder], 211 [robbery], 459 [burglary]; Veh. Code, § 10851, subd. (a) [unlawful driving or taking of a vehicle].)

In any event, we do not review the propriety of CALCRIM No. 334 in isolation. Throughout the presentation of the evidence, it was made clear that the prosecution accepted the burden to prove Smith's status as an accomplice. (*People v. Belton* (1979) 23 Cal.3d 516, 523-524 [burden to prove that a witness is the defendant's accomplice may be satisfied by prosecution's evidence].) Martinez's defense was that Smith

11

alone assaulted M.C.  The prosecution, in contrast, called Smith as its witness and presented significant evidence—his injuries, his statements to police, his conversation with Martinez, his plea, his testimony, M.C.'s testimony, and DNA—that he raped M.C. in concert with Martinez.

It was also clear that the prosecution had the burden to prove that Martinez committed every element of the charged crimes beyond a reasonable doubt.  The court told jurors that, to convict Martinez of rape in concert, they had to find that the prosecution proved that he "voluntarily acted with someone else who aided and abetted [his] commission" of the rape.  (CALCRIM No. 1001.)  Similarly, it told jurors that, to convict Martinez of sexual penetration in concert, they had to find that the prosecution proved that he either "voluntarily acted with someone else who aided and abetted [his] commission" of sexual penetration or "voluntarily aided and abetted someone else who personally committed sexual penetration."  (CALCRIM No. 1046.)  The court specified that whenever it told jurors that the prosecution had the burden to prove something, it had to prove it beyond a reasonable doubt.  (CALCRIM No. 220.)

There was little danger the jury would accept Smith's testimony without the requisite corroboration or skepticism.  The trial court instructed the jury that it could not convict Martinez based on Smith's testimony unless that testimony was corroborated.  (CALCRIM Nos. 301 & 334.)  The prosecution presented that corroboration:  M.C.'s testimony, Martinez's injuries, Martinez's statements to Smith at the police station and to his brother over the phone, and the DNA evidence.  The prosecution also presented evidence that Smith pled guilty to rape in concert, one of the same crimes charged against Martinez,

12

and received the low term of five years in prison in exchange for his plea.  This provided the jury "ample basis to view [his] testimony with distrust" given the circumstances of the case. (*People v. DeJesus* (1995) 38 Cal.App.4th 1, 27; see also *People v. Jones* (2003) 30 Cal.4th 1084, 1113 [where alleged accomplice was with defendant before and after crimes and obtained favorable plea bargain, jurors viewed testimony with "extreme caution"].)

The attorneys' arguments further helped to cure any instructional error.  (*Young*, *supra*, 34 Cal.4th at p. 1202.)  The prosecutor did not reference Martinez's burden to prove that Smith was his accomplice.  And he reiterated that he had the burden to prove each element of the charged crimes beyond a reasonable doubt.  Counsel for Martinez argued CALCRIM No. 334 did not apply because he committed no crime; Smith alone assaulted M.C.  She also argued that Smith was not a credible witness and that the jury should view his testimony skeptically based on his guilty plea.  Considered in light of the whole record, we see no reasonable likelihood that the jury misunderstood and misapplied the trial court's instructions.

DISPOSITION

The judgment is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

13

Michael J. Carrozzo, Judge

Superior Court County of Santa Barbara

_____

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.