Filed 1/20/23 P. v. Alvarez CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL CHRISTOPHER ALVAREZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B317490<br>(Super. Ct. No. 2014023475)<br>(Ventura County) |

Daniel Christopher Alvarez appeals from the judgment after a jury convicted him of first degree murder (Pen. Code,[1] §§ 187, subd. (a), 189, subd. (a)) and attempted second degree robbery (§§ 664/211, 212.5, subd. (c)). The jury also found true allegations that Alvarez committed murder during an attempted robbery (§ 190.2, subd. (a)(17)(A)) and that he personally and intentionally discharged a firearm causing death while committing his crimes (§ 12022.53, subd. (d)). The trial court

---

[1] Unlabeled statutory references are to the Penal Code.

sentenced him to life in state prison without the possibility of parole (LWOP) on the murder and a consecutive 25 years to life on the firearm enhancement. The court imposed and stayed a three-year (upper term) sentence on the attempted robbery plus 25 years to life on the firearm enhancement.

As to his convictions, Alvarez contends: (1) his murder conviction must be vacated because the trial court erroneously modified CALCRIM No. 521, (2) his attempted robbery conviction and the jury's true finding on the attempted robbery special circumstance allegation must be vacated due to insufficient evidence of his larcenous intent, (3) the special circumstance finding must be vacated due to insufficient evidence that the attempted robbery was not merely incidental to the murder, and (4) the finding must be vacated due to instructional error. As to his sentence, Alvarez contends: (5) his ineligibility for a youth offender parole hearing violates equal protection, and (6) the case must be remanded for resentencing pursuant to Assembly Bill No. 518 (2021-2022 Reg. Sess.), Senate Bill No. 567 (2021-2022 Reg. Sess.), and *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*). We affirm.

FACTUAL AND PROCEDURAL HISTORY

In November 2011, Alvarez and J.G. decided to purchase methamphetamine. Through P.R. they arranged to buy some from Ju.R. P.R. met with Ju.R. and paid around $230 for what was purportedly 3.5 grams of methamphetamine. Alvarez and J.G. subsequently discovered that the substance was worthless "salt" and decided that they had to "do something about it." Alvarez said that he knew Ju.R. and vowed to kill him.

In June 2012, Alvarez (then 19 years old) and Justin DeSantiago went to get tattooed by Alvarez's uncle. He was

2

busy, however, so Alvarez said that he and DeSantiago would return that evening.

Alvarez returned around 9:00 p.m. His aunt felt a hard object in his waistband when she hugged him.

R.M., Jo.R., and J.T. arrived at Alvarez's uncle's garage that same evening. Alvarez, DeSantiago, and A.S. were already there.

Around 10:00 p.m., A.S. heard an argument outside the garage. He went outside and saw Alvarez pointing a gun at Jo.R. DeSantiago was with him. Jo.R. said, "Go ahead. Go ahead. If you are going to kill me, kill me." Alvarez replied that Jo.R. had 10 seconds to give him $180 or he would start shooting. A few seconds later, Alvarez fired a single gunshot. R.M. heard it and ran outside with J.T. They saw Jo.R. lying on the ground and two people running from the scene.

The next day, Alvarez told a friend, "Man, fool, I just fucked some shit up. You don't even know, dog." He also said, "I just did some shit, fool, in the south on this fucking lame that owed me money and woo, woo, woo, I fucked this fool up." Alvarez said the shooting was related to a "ball of shit."

In late July or early August, J.G. asked Alvarez if he "took care of it." Alvarez replied that he "heard about [the killing]." Alvarez said that he and DeSantiago were in a garage when he saw "the fool that burned us." A few minutes later Alvarez confronted the man in an alley: "What's up now, pussy? [¶] . . . [¶] Shut the fuck up and empty out your pockets. I'm going to give you 10 seconds." He then counted to four and shot the man.

Alvarez admitted to J.G. that he shot the "wrong guy," Jo.R. instead of Ju.R. He said that he buried the gun he used to

shoot Jo.R. in Thousand Oaks. When J.G. asked if he could have the gun, Alvarez retorted, "Are you stupid? It has a body on it." J.G. said he did not care because he had an alibi: He was in jail at the time of the shooting. Alvarez replied, "Still, if you get busted with it, you have a murder weapon."

The following month, Alvarez brought a loaded firearm to J.G.'s garage. He said he wanted to exchange it for a weapon that did not "have a body on it."

## DISCUSSION

### CALCRIM No. 521

Alvarez first contends his murder conviction should be vacated because the trial court erroneously modified CALCRIM No. 521 by telling jurors that prosecutors did not need to show that he "maturely and meaningfully reflected [on] the gravity of his act" to prove that he committed deliberate, premeditated murder. As he concedes in his reply brief, however, our Supreme Court has rejected this argument. (See *People v. Ramirez* (2021) 10 Cal.5th 983, 1000-1006.) We thus reject Alvarez's contention. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

### Larcenous intent

Alvarez next contends his attempted robbery conviction and the jury's true finding on the attempted robbery special circumstance allegation should be vacated because the only evidence of his larcenous intent was his claim of right to the money he was owed after being swindled in a methamphetamine transaction. We disagree.

Larcenous intent—the intent to steal—is a required element of attempted robbery. (*People v. Alvarez* (1996) 14 Cal.4th 155, 224.) "[A] claim-of-right defense can negate [this]

4

element." (*People v. Tufunga* (1999) 21 Cal.4th 935, 950.) The defense applies if a defendant seeks to regain property over which they possess a good faith belief of ownership or title. (*Ibid*.) But it does not apply "where the claimed right to the property is rooted in a 'notoriously illegal' transaction." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1144.)

Here, Alvarez attempted to recoup money after he was allegedly cheated out of 3.5 grams of methamphetamine. His claimed right to the money was thus rooted in a notoriously illegal transaction. A claim-of-right defense does not apply in such situations. (*People v. Johnson* (1991) 233 Cal.App.3d 425, 457-458.) This is true even though Alvarez received "salt" instead of methamphetamine. (See Health & Saf. Code, § 11355 [criminalizing the sale of substances falsely represented to be illicit drugs]; cf. *People v. Siu* (1954) 126 Cal.App.2d 41, 43-44 [defendant guilty of attempted possession of a controlled substance even though substance was talcum powder].) His first sufficiency-of-the-evidence challenge accordingly fails.

*Attempted robbery as "merely incidental to" murder*

Alvarez next contends the jury's attempted robbery special circumstance finding should be vacated due to insufficient evidence that the attempted robbery of Jo.R. was more than incidental to his murder. We again disagree.

An attempted robbery special circumstance applies if a defendant commits murder while attempting to commit robbery. (§ 190.2, subd. (a)(17)(A).) To prove this, prosecutors must show that "the defendant formed the intent to steal before or while killing the victim." (*People v. Lindberg* (2008) 45 Cal.4th 1, 28 (*Lindberg*).) This requires " 'show[ing] that the defendant had an independent purpose for the commission of the' " robbery—that

5

is, that the " 'commission of the [attempted robbery] was not *merely incidental* to an intended murder.' [Citations.]" (*Id.* at pp. 27-28, italics added.) If the evidence instead shows that the defendant had "the sole purpose of killing" the victim, however, the special circumstance does not apply. (*People v. Riccardi* (2012) 54 Cal.4th 758, 836-837, abrogated on another point by *People v. Rangel* (2016) 62 Cal.4th 1192, 1215-1216.)

To determine whether the jury correctly determined that the special circumstance applies here, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find' " its allegation true beyond a reasonable doubt. (*People v. Cravens* (2012) 53 Cal.4th 500, 507.) " 'The standard of review is the same in cases in which [prosecutors] rely mainly on circumstantial evidence.' " (*Ibid.*) " ' "Although it is the duty of the jury to [reject an allegation] if it finds [the] . . . evidence . . . susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court [that] must be convinced . . . beyond a reasonable doubt." ' " (*Id.* at pp. 507-508.) " ' " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " ' " (*Id.* at p. 508.) "The [finding] shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' " it. (*Ibid.*)

Substantial evidence supports the jury's finding that the attempted robbery of Jo.R. was not merely incidental to his murder. After discovering that he had been cheated in a drug

6

deal, Alvarez vowed to "do something about it." Several months later A.S. heard Alvarez threaten to shoot Jo.R. if he did not remit $180. Alvarez later told J.G. that he had given Jo.R. "10 seconds" to "[s]hut the fuck up and empty out [his] pockets." He also bragged that he "took care" of the "fool that burned us." From this evidence, it can be inferred that Alvarez had an intent to steal separate from his intent to kill. (See, e.g., *People v. Banks* (2014) 59 Cal.4th 1113, 1157 [upholding attempted robbery special circumstance where defendant shot victim because victim refused to give him money]; *People v. Sandoval* (1994) 30 Cal.App.4th 1288, 1296, 1299-1300 [attempted robbery not merely incidental to attempted murder where defendant shot victim after he refused to hand over money].)

Alvarez counters that he did not wait for Jo.R. to comply with his demand for money, which shows that he had only the intent to kill. But the evidence showed that Alvarez counted at least to four before he shot Jo.R., which the jury interpreted as showing that he also harbored the intent to steal. It is not the province of this court to substitute one interpretation of the evidence for the trier of fact's.

Alvarez also argues that he formed the intent to kill immediately after the bad drug deal, months before he formed any intent to steal from Jo.R. This argument confuses the temporal requirements of the special circumstance's applicability. The circumstance does not require a defendant to form the intent to steal before they form the intent to kill, as Alvarez asserts, but instead that they form the intent to steal "before or while *killing*." (*Lindberg*, *supra*, 45 Cal.4th at p. 28, italics added.) Substantial evidence supports the jury's determination that he did.

*Instructions on the special circumstance allegation*

Alternatively, Alvarez asserts the attempted robbery special circumstance finding should be vacated because the trial court's instructions excused jurors from finding that the attempted robbery was merely incidental to the murder. But Alvarez did not object to the instructions during the proceedings below. His assertion is forfeited. (*People v. Lee* (2011) 51 Cal.4th 620, 638.)

It is also meritless. "We independently review whether the trial court accurately instructed the jury" on the attempted robbery special circumstance allegation. (*People v. Martinez* (2019) 34 Cal.App.5th 721, 728.) "We review the allegedly erroneous instruction in the context of the evidence presented at trial" and "the instructions as a whole [citation], with the assumption that jurors are 'capable of understanding and correlating' all . . . the instructions given [citation]." (*Ibid.*) "We give the instructions a reasonable, rather than technical, meaning [citation], and interpret them to support the judgment if possible [citation]." (*Ibid.*) "We also consider the arguments of counsel to assess the instructions' impacts on the jury." (*Ibid.*) "Our duty is to determine 'whether there is a reasonable likelihood that the jury misunderstood and misapplied the allegedly erroneous [special circumstance] instruction.' " (*Ibid.*, alterations omitted.)

There was no such reasonable likelihood here. The trial court instructed jurors pursuant to CALCRIM No. 730, which told them that to find the attempted robbery special circumstance allegation true they had to conclude that prosecutors proved, beyond a reasonable doubt, that Alvarez: (1) "attempted to commit a robbery," (2) "intended to commit a robbery," and (3)

8

"did an act that caused the death of another person."  The
instruction continued:

> "To decide whether [Alvarez] attempted to commit
> robbery please refer to the separate instructions . . .
> on that crime.  You must apply those instructions
> when you decide whether [prosecutors] have proved
> this special circumstance.
>
> "[Alvarez] must have intended to commit the felony of
> robbery before or at the time of the act causing
> [Jo.R.'s] death.
>
> "In addition, in order for this special circumstance to
> be true, [prosecutors] must prove that [Alvarez]
> intended to commit robbery independent of the
> killing.  If you find that [Alvarez] only intended to
> commit murder and the *commission of robbery* was
> merely part of or incidental to the commission of that
> murder, then the special circumstance has not been
> proved."  (Italics added.)

To Alvarez, this instruction excused jurors from finding that the
*attempted* robbery was more than incidental to the murder in
order to find the special circumstance true.

While the last sentence of the instruction, considered alone,
did misstate that the jury was required to find that Alvarez's
commission of *attempted robbery* was more than incidental to the
murder, the error was harmless beyond a reasonable doubt.  (Cf.
*People v. Prieto* (2003) 30 Cal.4th 226, 256-257 (*Prieto*)
[instruction that omits element of special circumstance subject to
review under *Chapman v. California* (1967) 386 U.S. 18].)  The
complete instruction referred to *attempted* robbery several times.

9

It referred jurors to separate instructions on *attempted* robbery and told them to apply those instructions when deciding whether the special circumstance had been proven, a point reinforced by the trial court's admonishment to "[p]ay careful attention to all of [its] instructions and consider them together."

Prosecutors' closing arguments similarly reinforced the correct application of the law:

> "There is a special circumstance alleged in this case. And that is murder in the commission of a robbery. So there has to be an *attempted*—[Alvarez] had to have *attempted to commit robbery*, intended to commit robbery, did an act that caused death in the commission of that robbery, and must have intended to rob before killing, must have intended to rob independent of the killing. Basically, there needs to be a dual intent." (Italics added.)

They later referred to Alvarez's act of "holding a gun out and demanding that the guy turn over money or property":

> "[T]hat is an *attempted robbery*. He did not complete the robbery because [Jo.R.] only had three bucks on him, but the *attempt* is all you need. So he *attempted to rob*, and in the midst of that *attempt*, he decided to kill. So we have fulfilled the element of the special circumstance." (Italics added.)

Additionally, the verdict form shows that jurors found true the allegation that Jo.R.'s murder "was committed while [Alvarez] was engaged in the commission and *attempted* commission of robbery." (Italics added.) They also convicted Alvarez of *attempted* robbery, the only other charge in the

10

indictment.  Considered together, the instructions as a whole alongside the arguments of counsel and the verdict forms render any error in the trial court's modified version of CALCRIM No. 730 harmless beyond a reasonable doubt.  (*Prieto*, *supra*, 30 Cal.4th at p. 258; see, e.g., *People v. Majors* (1998) 18 Cal.4th 385, 410 [instructional error harmless where closing arguments correctly state law and verdict forms reflect necessary findings]; *People v. Garcia* (2022) 76 Cal.App.5th 887, 894 [error harmless where other instructions and closing arguments correctly state law].)

*Youth offender parole hearing*

Next, Alvarez contends his ineligibility for a youth offender parole hearing violates equal protection.  We disagree once again.

In 2013, the Legislature added section 3051 to the Penal Code, which made parole hearings available for juveniles who committed offenses before they were 18 years old.  (Sen. Bill No. 260 (2013-2014 Reg. Sess.); Stats. 2013, ch. 312, § 4.)  The Legislature has since expanded the availability of youth offender parole hearings to those who committed their offenses prior to age 25.  (Sen. Bill. No. 394 (2017-2018 Reg. Sess.); Stats. 2017, ch. 684, § 1.5.)  These hearings are available at various intervals depending on the length of the offender's sentence and the age at which they committed their offense.  (See § 3051, subd. (b).)

"A person who was convicted of a controlling offense that was committed before [they] had attained 18 years of age and for which the sentence is [LWOP] shall be eligible for release on parole at a youth offender parole hearing during [their] 25th year of incarceration."  (§ 3051, subd. (b)(4).)  But a person who "is sentenced to [LWOP] for a controlling offense that was committed *after* [they] had attained 18 years of age" is not eligible for such a

11

hearing. (*Id.*, subd. (h), italics added.) To Alvarez, this distinction amounts to an equal protection violation.[2]

Alvarez is mistaken. When evaluating an equal protection challenge, we first "ask whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner." (*People v. Chatman* (2018) 4 Cal.5th 277, 289.) We then "consider whether the challenged classification . . . bears a rational relationship to a legitimate state purpose." (*Ibid.*) "A classification in a statute is presumed rational until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable." (*Ibid.*)

Here, even if we assume that young adults who commit special circumstance murder, like Alvarez, are similarly situated to juveniles who commit special circumstance murder, we would find no equal protection problem because "[t]he Legislature had a rational basis to distinguish between offenders . . . based on their age." (*People v. Sands* (2021) 70 Cal.App.5th 193, 204.) For juvenile offenders, an LWOP sentence "may violate the Eighth Amendment." (*Ibid.*) "But the same sentence does not violate the Eighth Amendment when imposed on an adult, even an adult under the age of 26." (*Ibid.*) "We agree with the other courts [that have confronted this issue] that the Legislature could

---

[2] In his reply brief, Alvarez attempts to reframe his challenge, asserting that excluding a 19-year-old murderer sentenced to LWOP from a youth offender parole hearing but granting such a hearing to a 19-year-old murderer sentenced to a parole-eligible indeterminate term violates equal protection. (See *People v. Hardin* (2022) 84 Cal.App.5th 273, 288-291 (*Hardin*), review granted Jan. 11, 2023, S277487.) We do not consider assertions raised for the first time in reply briefs. (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 255.)

rationally decide to remedy unconstitutional sentences but go no further."[3] (*Ibid.*; see, e.g., *Hardin, supra*, 84 Cal.App.5th at pp. 285-286, review granted; *People v. Morales* (2021) 67 Cal.App.5th 326, 347; *People v. Jackson* (2021) 61 Cal.App.5th 189, 196-198; *People v. Acosta* (2021) 60 Cal.App.5th 769, 779-781.)

*Other sentencing issues*

The trial court sentenced Alvarez in January 2019. At the sentencing hearing the court said that the law was "very clear about what [it] need[ed] to do" and that it did not "feel bad" for Alvarez because he "deserve[d] what[] [was] going to happen to him." On count 1 it imposed an LWOP sentence on the murder plus a consecutive 25 years to life on the attached firearm enhancement. On count 2 it imposed and stayed an upper-term sentence of three years on the attempted robbery plus 25 years to life on the attached firearm enhancement. The court said that it chose the upper term "because the crime . . . involve[d] planning and sophistication and . . . incredible violence." It cited no circumstances in mitigation.

*1. Assembly Bill No. 518*

Regarding this sentence, Alvarez first contends the case should be remanded for resentencing pursuant to Assembly Bill No. 518 (2021-2022 Reg. Sess.). We disagree.

"Section 654 precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22

---

[3] We also agree with our scores of colleagues who have recognized that this conclusion may be in tension with recent Eighth Amendment jurisprudence, and join their call to the Legislature to consider "revisit[ing] where it has drawn the line [in] section 3051, subdivision (h)." (*In re Murray* (2021) 68 Cal.App.5th 456, 464-465.)

Cal.4th 290, 294.) When the trial court sentenced Alvarez, a single act that was punishable in different ways had to be punished under the law that provided for the longest term of imprisonment. (Former § 654, subd. (a).) Effective January 1, 2022, Assembly Bill No. 518 amended section 654 such that a defendant is no longer required to be punished under the provision providing for the longest term. (See Stats. 2021, ch. 441, § 1.) Instead, a court now has the discretion to impose punishment under any applicable provision. (§ 654, subd. (a).)

Alvarez contends, and the Attorney General concedes, that Assembly Bill No. 518 applies retroactively to cases that are not yet final on appeal. We agree. (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.) But that does not mean that *this* case must be remanded for the trial court to consider whether to stay the sentence on count 1 instead of count 2, as he asserts.

The jury found true the special circumstance allegation that Alvarez committed murder during an attempted robbery. That finding cannot be stricken. (§ 1385.1.) And it mandates one of two possible sentences: death or LWOP. (§ 190.2, subd. (a).) But staying the sentence on count 1 and ordering Alvarez to serve the sentence imposed on count 2 instead would result in a sentence other than death or LWOP—in violation of section 190.2. It would also have the same "practical" effect as striking the special circumstance finding—in violation of section 1385.1. (*People v. Garcia* (2022) 83 Cal.App.5th 240, 257-258.) Resentencing pursuant to Assembly Bill No. 518 is thus not permitted. (*Garcia*, at p. 243.)

### 2. Senate Bill No. 567

Alvarez next contends the trial court erred by imposing the upper term on his attempted robbery conviction without

14

complying with the provisions of Senate Bill No. 567 (2021-2022 Reg. Sess.).  But even if Senate Bill No. 567 applies here, it would have " ' "no practical effect" ' " on Alvarez's total sentence. (*People v. Lamoureux* (2020) 57 Cal.App.5th 136, 153.)  Because we reject all the challenges to his murder conviction and sentence, the stay on the sentence imposed on his attempted robbery conviction remains in effect.  (*People v. Rojas* (2015) 237 Cal.App.4th 1298, 1309.)  Any modification of that sentence would thus have no impact.  The contention is moot. (*Lamoureaux*, at p. 153.)

### 3. People v. Tirado

Finally, Alvarez contends the case should be remanded for the trial court to exercise its discretion to impose a lesser firearm enhancement.  We disagree once again.

Section 12022.53 sets out a graduated punishment scheme for a defendant who uses a firearm during the commission of an enumerated felony: a 10-year sentence enhancement for the personal use of a firearm (*id.*, subd. (b)), a 20-year enhancement for the personal and intentional discharge of a firearm (*id.*, subd. (c)), and a 25-year-to-life enhancement for the personal and intentional discharge of a firearm causing great bodily injury or death (*id.*, subd. (d)).  Since 2018 a trial court has had the discretion to strike or dismiss an enhancement imposed pursuant to section 12022.53.  (*Id.*, subd. (h); see Sen. Bill. No. 620 (2017-2018 Reg. Sess.); Stats. 2017, ch. 682, § 2.)  And as our Supreme Court recently clarified, if the court chooses to exercise that discretion it can then impose a lesser enhancement in lieu of the one stricken.  (*Tirado*, *supra*, 12 Cal.5th at p. 700.)

*Tirado* applies retroactively to Alvarez's case because it is not yet final on appeal.  (See *Burris v. Superior Court* (2005) 34

15

Cal.4th 1012, 1023 [Supreme Court decisions that resolve splits in the Court of Appeal apply retroactively].) But a remand for resentencing is not required because the record "clearly indicate[s]" that the trial court would not have imposed a lesser firearm enhancement had *Tirado* been decided prior to sentencing. (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.)

At the sentencing hearing the trial court said that it did not "feel bad" for Alvarez and that he "deserve[d] what[] [was] going to happen to him." It then imposed the maximum sentence possible—despite having the ability to impose a low or middle term on the attempted robbery and the ability to strike one or both firearm enhancements. The court also noted that Alvarez's crimes involved "incredible violence" and that he had failed to identify any factors in support of a lesser sentence. A *Tirado* remand would be futile.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.      YEGAN, J.

16

Ryan J. Wright, Judge

Superior Court County of Ventura

_____

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.