Filed 5/23/24  P. v. McCabe CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID McCABE,<br><br>    Defendant and Appellant. | B328597<br><br>(Los Angeles County<br>Super. Ct. No. NA116642) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard M. Goul, Judge.  Affirmed.

Rudolph J. Alejo, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant David McCabe was charged with three counts of arson after he lit three fires in the City of Long Beach. At trial, he admitted to setting the fires, but invoked the defense of necessity based on his need to warm his arthritic hands. A jury convicted him of three counts of the lesser included offense of unlawfully causing a fire. After his conviction, defendant asserted that his counsel did not adequately represent him at trial and requested a new attorney in order to file a motion for new trial. The trial court declined his request and imposed a sentence of time served with no probation.

On appeal, defendant argues that the verdicts are tainted by two instructional errors and that the trial court erred in refusing to hold a *Marsden* hearing. There was no prejudicial error, so we affirm.

### FACTS AND PROCEDURAL BACKGROUND

On February 4, 2021, defendant David McCabe, a 63-year-old homeless veteran, lit three separate fires in the City of Long Beach—two on the campus of a local high school, and one in the front yard of someone's home. When police confronted him, he admitted to setting the fires, described where he had set them, and explained that he needed the fires to warm his hands.

### I.    *Charges*

The People charged defendant with three counts of arson, including one count of arson of forest land (Penal Code, § 451, subd. (c); count one) and two counts of arson on a property of another (§ 451, subd. (d); counts two and three). The arson of forest land count corresponded to the fire defendant set in the front yard of a home. The People further alleged that defendant had a prior felony conviction for unlawfully causing a fire pursuant to section 452, subdivision (b) that qualified as a strike

under section 1170.12, subdivision (b) and section 667, subdivision (d).

The matter proceeded to a jury trial.

## II.    *Evidence at Trial*

Defendant testified that he set the three fires, but that he had had only done so to warm his hands, which were extremely painful and stiff.  He explained that he has psoriatic arthritis, which causes swelling episodes that destroy his joints, and that this condition is aggravated by the cold.  Defendant takes two medications for his arthritis, but he had been robbed of all of his belongings two days before the fires.[1]  He testified that he was punched twice in the face during the robbery, leaving him with bruises on his cheeks.

Defendant further testified that COVID-19 was running rampant at the time, and that he was afraid to go to homeless shelters as a result.  Defendant went to the Veteran's Administration Hospital, but was told to leave the premises because he lacked identification.  He slept outside on February 3, 2021, which he testified was a "very cold" night.  Having slept in the cold and gone without his medication for two days, defendant woke up with pain and stiffness in his hands.  He was also sick,

---

[1]    Defendant also presented the expert testimony of an emergency medical physician who having reviewed defendant's medical records confirmed that defendant had been diagnosed with psoriatic arthritis and other conditions which made him vulnerable to severe COVID-19.  The doctor explained that psoriatic arthritis "causes inflammation in your body that creates problems with . . . all the joints in your body can cause inflammation, stiffness, and pain," and that one of the medications defendant had been prescribed was "used to treat more severe cases of psoriatic arthritis."

sneezing, and had a runny nose. Defendant explained that he walked to a school that was closed due to COVID-19, where he started a fire "to warm [his] hands" and "take away the pain." He traveled to another area of the school and set another fire. Defendant testified to having worn his clothes for two days at that point. After putting the second fire out, defendant got onto a bus, which was "very hot inside." He got off the bus and was "hit by cold again." He then "collapsed on the ground" in front of a home, where he made "another little fire" "under manicured bushes that had been blown out." A woman saw defendant, put the fire out, and called the police.

Defendant admitted during direct examination that in 2018 he was convicted for unlawfully setting a fire in an inhabited structure after he set fire to a plastic wreath hanging on his friend's door. On cross-examination about this incident, defendant testified that the fire he set to the wreath was a "tiny fire," to which the prosecutor responded, "so we have to take your word . . . ." Defendant interjected that he "witnessed it," and the prosecutor retorted, "you didn't witness it. You did it." Defendant responded, "that makes me a witness too," and the prosecutor responded, "No. It makes you a defendant." Defense counsel objected as argumentative and the court sustained it.

On cross-examination, defendant testified that he had been wearing the same clothes for three days when he lit the fires. He also conceded that he lit a fire in the afternoon when "it wasn't cold" anymore, explaining that he was having an "arthritis flare-up," which he testified "the cold does not affect." Defendant described his hands as "stiff" and "hard to move" when he experiences such flare-ups. He conceded that he lit one of the

4

fires on the grass at a school, despite being only two or three feet from the sidewalk.

The video from the camera worn by the responding officer was authenticated by that officer and played for the jury but is not part of the record on appeal.

The fire captain who investigated the fires testified about the locations of the fires and opined that defendant had set them. He also explained that although defendant insisted he had "only burned grass," based on his training as a fire captain, any plant that "grows in the ground" qualifies as forest land.

The parties stipulated that defendant had been "convicted for Penal Code section 452(b), commonly known as causing fire to an inhabited structure," in 2018.

## III.  *Closing Arguments*

After explaining how the evidence supported each element of arson of forest land (§ 451, subd. (c)) and arson of property (*id.*, subd. (d)), the prosecution argued that defendant "was exaggerating" about his pain and questioned his credibility.

He showed photos of defendant—not part of the record on appeal—and stated, "there is no way [defendant looked] like that after three days in the same pair of clothes." Referring to a photo and the footage from the responding officer's body camera, the prosecution asked the jury whether they saw "bruising to his face," or "sneezing," consistent with defendant's testimony about being sick and having bruised cheeks from the robbery.  The prosecution also noted that in the body camera footage, defendant "put[] his hands up," "extending his middle finger," gave a "thumbs up," and then "the hang loose," all to show that plaintiff had exaggerated about the pain and stiffness in his hands.  The prosecution also noted that when defendant

5

was speaking with officers, he stated that it was hot out and asked to remove his sweatshirt.

Defense counsel's sole argument was that defendant, despite having set the fires, was "not guilty" because he acted out of legal necessity in that "he started the fires to keep himself and his damaged hands warm." He went on to argue that defendant "acted in an emergency," in a time when he had no access to healthcare, and COVID-19 prevented him from staying in a homeless shelter.

In his final closing argument, the prosecutor explained that, like crimes, "defenses also have elements," and that the jury has "to find every single one of" the six elements of necessity: emergency; no adequate legal alternative; act did not create danger greater than one avoided; defendant actually believed fires were necessary to prevent harm; reasonable person would have thought fires necessary; and defendant did not substantially contribute to the emergency.

As to the emergency element, the prosecutor argued that defendant did not inform any officers that he lit the fires out of emergency; he did not go to an emergency room; he walked away from the fires he had lit; and he did not wear his gloves, despite being heard in the body camera footage stating that he had gloves. Finally, the prosecutor suggested there were adequate legal alternatives, such as wearing his gloves or lighting the fires at a grill or fire pit rather than in someone's front yard.

After the trial, the parties and the court realized that defendant's prior conviction under section 452, subdivision (d) had been incorrectly alleged as a strike.

## IV. *Jury Instructions*

The jury was instructed on "Count 1" that defendant is guilty of arson in violation of section 451, subdivision (c), if he "set fire to or burned forest land" and "acted willfully and maliciously." The instructions for "Counts 2 and 3," for arson in violation of section 451, subdivision (d), provided that defendant is guilty if he "set fire to or burned property," and "acted willfully and maliciously." In each of these instructions, the jury was informed that "[p]roperty means personal property or land other than forest land," but the definition for "forest land" – provided as an option in CALCRIM No. 1515 as "brush-covered land, cut-over land, forest, grasslands, or woods" – was not given.

The jury was also instructed on the lesser offenses— referred to as "Count[s] 4, 5, and 6"--of "unlawfully causing a fire" under section 452 (CALCRIM No. 1532). The jury was instructed that defendant is guilty of unlawfully causing a fire if he "set fire to, burned, or caused the burning of property," and "did so recklessly."

The jury was instructed on the defense of necessity (CALCRIM No. 3403), that "defendant is not guilty of [counts] 1, 2, [or] 3 . . . if [he] acted because of legal necessity."

## V. *Verdict*

After closing argument, the jurors deliberated for two hours in the afternoon and one more hour the following morning before returning their verdict.

In accordance with CALCRIM No. 3517 instructing jurors on completion of the verdict forms, there were separate verdict forms for the arson counts (the greater crimes) and the lesser offense of unlawfully causing a fire associated with each greater crime. The labelling of the counts was the same for the charged

7

offenses of arson as it was for the lesser offenses; that is, both the charged and the corresponding lesser offenses were labeled as counts one, two, and three.

The jury found defendant "not guilty of the crime of arson of . . . forest land in violation of . . . section 451(c), a felony as charged in count 1 of the information," but "guilty of the crime of unlawfully causing a fire in violation of . . . section 452, a felony, a lesser included offense within count 1 of the information." Similarly, the jury found defendant "not guilty of the crime of arson of a property of another in violation of . . . section 451(d), . . . as charged in" counts two and three of the information, but "guilty of the crime of unlawfully causing a fire in violation of . . . section 452, a felony, a lesser included offense within" counts two and three of the information.

After the jury returned its verdict and was discharged, the prosecution moved "to amend counts 2 and 3 to reflect lesser included offenses as [section] 452(d), a misdemeanor and count 1 as lesser included offense 452(c), a felony." The court noted there was "no objection by defense counsel," and the lesser offenses were amended accordingly.

## VI.    Marsden *Motion*

On December 14, 2022, the court convened a hearing for sentencing. At that hearing, defendant expressed dissatisfaction with his attorney, complaining that the prosecutor had "told the jurors [he] had an arson with a strike," and that defense counsel "did not object." Defendant also complained that the prosecutor during cross-examination said that defendant was not a "witness" to the prior crime because he was the "defendant," and that defense counsel did not object, which defendant argued was ineffective assistance. Defendant continued that his counsel,

8

"didn't defend [him] all the way," and that he had "lots of other problems" with his attorney, including that for 22 months, defendant and his counsel had been arguing about whether defendant had a prior strike, which he did not.

The court continued the sentencing hearing and set a hearing for a possible new trial motion for the same date. Defendant waived his right to be sentenced that day, stating "but if I have to make that motion for a new trial, I need a new attorney."

At the next hearing, defendant stated that his counsel "cannot represent" him because "he is guilty of ineffective assistance of counsel," and that "veterans court [is] where [defendant is] supposed to go next." Defendant told the court, that he "cannot be released out in the cold with no clothes, no money, in the same position [as he] was when [he] was arrested," and that he "want[s to file] a motion for retrial for the reasons . . . stated." The court proceeded to sentence defendant to "no probation [and] time served."

## DISCUSSION

### I. *Instructional Errors*

We review claims of instructional error de novo. (*People v. Morales* (2021) 69 Cal.App.5th 978, 990.)

#### A. Necessity

The jury was instructed that necessity was a defense to counts one, two, and three, and was only presented with verdict forms for counts labeled one, two, and three. The jury instructions, however, referred to the lesser offenses as counts four, five, and six. Based on this inconsistency, defendant argues that the trial court erred in failing to instruct the jury that necessity was a defense not only to the charged crimes of arson,

9

but also to the lesser included offenses of unlawfully starting a fire.  We consider the merits of this argument, despite defendant having forfeited it by not requesting a modification to the jury instructions below.  (*People v. Bell* (2020) 48 Cal.App.5th 1, 20.)

When instructional error is claimed, our task is to determine whether the trial court " ' "fully and fairly instructed on the applicable law." ' "  (*People v. Franco* (2009) 180 Cal.App.4th 713, 720.)  When a jury instruction is ambiguous, we look to the instructions as a whole and the entire trial record—including the arguments of counsel—to determine whether there is a reasonable likelihood that the jury was misled to the defendant's prejudice.  (*People v. O'Malley* (2016) 62 Cal.4th 944, 991; *People v. Bell, supra,* 48 Cal.App.5th at p. 16.)  We must assume that jurors are intelligent people capable of understanding and correlating all jury instructions given.  (*O'Malley*, *supra,* 48 Cal.4th at p. 991.)  We give jury instructions a reasonable, rather than technical, meaning, and interpret them to support the judgment if possible.  (*People v. Martinez* (2019) 34 Cal.App.5th 721, 728; *Franco*, *supra,* 180 Cal.App.4th at p. 720.)

We agree that viewed in isolation the inconsistent numbering of the lesser included offenses—labeled as counts one, two, and three on the verdict forms, but as counts four, five, and six in the jury instructions—might create some ambiguity as to whether necessity is a defense to the lesser included as well as the charged offenses.  However, viewed in the context of the trial record as a whole, we find no reasonable likelihood that the jury misinterpreted the instructions.  Defendant's entire case centered on his necessity defense, as he did not dispute having set the fires.  Both attorneys' closing arguments focused on the

applicability of the defense. Defense counsel argued that defendant was "not guilty" by reason of legal necessity, without referring to or distinguishing between the charged and lesser included offenses. Finally, and most tellingly, there is no indication in the record that the jury sought clarification on the instructions; and its deliberation was relatively short. (See *People v. Young* (2005) 34 Cal.4th 1149, 1203.) Because we conclude there was no error, we do not reach the parties' arguments about harmlessness.

### B.    *Elements of Lesser Included Offenses*

Defendant argues that the trial court erred in issuing the same instruction for unlawfully setting a fire to *property* for all three lesser included offenses because the first charged offense was for arson of forest land, not property. The People concede this was error, but argue it was harmless.

*Chapman* review applies to instructions that omit an element of an offense or that provide an incomplete or misleading conception of an element. (*People v. Schuller* (2023) 15 Cal.5th 237, 257.) Accordingly, we must determine whether it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error. (*People v. Merritt* (2017) 2 Cal.5th 819, 824, 831.)

Section 450 defines "forest land" broadly, to mean "any brush covered land, cut-over land, forest, grasslands, or wood." (§ 450, subd. (b); CALCRIM No. 1515.) Defendant himself testified that he set fire under "manicured bushes that had been blown out." The fire captain described a photo as showing a close-up of "the area where the grass burned." In closing, the prosecutor argued that the forest land element was met because forest land includes "brush covered land." Defendant did not

11

offer any evidence or argument to oppose the fire captain's testimony or the prosecutor's theory on this point.  Instead, his sole defense was based on legal necessity.

Defendant argues that he "personally disputed" the forest land element in his testimony when he stated, "I can't see that as forest land," referring to the grass in the front yard where he set a fire.  Defendant's opinion about the legal definition of "forest land" for the purpose of arson is not relevant.  Based on the record, it is clear beyond a reasonable doubt that the jury would have reached the same verdict had it been properly instructed on the "forest land" element.  Because there was no conflicting evidence and no argument about the forest land element, we are unpersuaded by defendant's argument that "the jury necessarily found the fire was *not* to forest land" when it found defendant guilty of the lesser crime of unlawfully setting a fire to property.  Although the jury convicted defendant on the only lesser crime it was presented with—unlawfully setting fire to property—the prosecutor properly moved to amend the information to state the correct offense of unlawfully setting fire to forest land, and defendant did not object.  (See *People v. Sawyers* (2017) 15 Cal.App.5th 713, 720 [the Penal Code permits accusatory pleadings to be amended at any stage of the proceedings for any defect or insufficiency and bars reversal of a judgment by reason of any defect that does not prejudice a defendant's substantial right on the merits]; *People v. Whitmer* (2014) 230 Cal.App.4th 906, 919 [defendant may impliedly consent to the amendment of a pleading by his conduct].)

## II.  *Lack of* Marsden *Hearing Was Harmless*

Defendant argues that the trial court's refusal to hold a *Marsden* hearing despite his requests for new counsel requires a

conditional reversal and remand.  The People concede that "the trial court should have held a *Marsden* hearing," but urge that any error was harmless.

Under *People v. Marsden* (1970) 2 Cal.3d 118, 124, it is error for a trial court to deny the defendant the opportunity to explain the basis for his request for new counsel.  (*People v. Sanchez* (2011) 53 Cal.4th 80, 87.)  Given that defendant did provide his reasons for requesting new counsel (despite not being asked), we are not convinced that the trial court erred in not holding a full-blown hearing.  (See *People v. Wharton* (1991) 53 Cal.3d 522, 580 [when basis of defendant's dissatisfaction with counsel is set forth in sufficient detail, a full-blown hearing is not required].)  We need not reach that issue, however, because we agree that any error was harmless.

We apply *Chapman*'s beyond-a-reasonable-doubt standard in assessing the harmlessness of a trial court's failure to hold a *Marsden* hearing.  (*People v. Winn* (2020) 44 Cal.App.5th 859, 871.)  A trial court's failure to conduct a postconviction *Marsden* hearing is harmless where the defendant "has made no showing . . . either that his *Marsden* motion would have been granted had it been heard, or that a more favorable result would have been achieved had the motion in fact been granted."  (*People v. Washington* (1994) 27 Cal.App.4th 940, 944.)

Here, none of the alleged shortcomings defendant identified provided a basis for granting his *Marsden* motion or a motion for new trial.  The prosecutor never told the jury defendant had a prior arson conviction, so defendant's assertion that his counsel failed to object to such a statement is without merit.  Defendant also asserts that his counsel was ineffective in that he failed to object when the prosecutor during cross-examination said that

13

defendant was not a "witness" to the prior crime because he was the "defendant." Such a trivial and tangential matter falls short of showing defense counsel's incompetence. (See *People v. Centeno* (2014) 60 Cal.4th 659, 675 [" 'a mere failure to object to evidence or argument seldom establishes counsel's incompetence' "].) Nevertheless, the record shows defense counsel did object and the court sustained that objection. Defendant stated that his counsel, "didn't defend [him] all the way," and that he had "lots of other problems" with his attorney, including that for 22 months, defendant and his counsel had been arguing about whether defendant had a prior strike, which he did not. We agree with trial court, however, that nothing in the record suggests defense counsel was inadequate, at least not in any way that prejudiced defendant. Defendant complains that "he was made ineligible for [veteran] diversion by virtue of the incorrect prior strike allegation." But defense counsel did request defendant be admitted into a veteran's program, but the program administrator concluded he was ineligible for diversion because of his arson charges in addition to his prior conviction for unlawfully setting fire to property. Ultimately, the trial court found "the defendant eligible but not suitable for diversion in that no program is available that meets the defendant's needs." Defendant does not contend he would have received a more favorable sentence had he been appointed new counsel during sentencing.

## *DISPOSITION*

We affirm the judgment.

LEE, J.[*]

I CONCUR:

KIM, J.

---

[*]  Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

The People v. David McCabe
B328597


BAKER, Acting P. J., Dissenting


The problem with the judgment of conviction in this case does not really depend on correlating count numbers in jury instructions with those on verdict forms. The problem is simple: the jury was never instructed it should find defendant and appellant David McCabe not guilty of *any* offense (lesser included or as charged) if it credited his necessity defense. Under the circumstances, we should not rely on weak arguments about the duration of jury deliberations or dogs that did not bark (see generally *Elsner v. Uveges* (2004) 34 Cal.4th 915, 933, fn. 18 [citing Silver Blaze]) to affirm. We should reverse and permit retrial in the event the People so elect. That is what I would do.


BAKER, Acting P. J.