Filed 11/14/24  P. v. Thornton CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080933 |
| v. | (Super.Ct.No. SWF2100367) |
| SHAUN LAYJEWEL THORNTON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  F. Paul Dickerson III, Judge.  Affirmed in part; reversed in part, with directions.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and and Laura A. Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

In March 2021, multiple law enforcement vehicles engaged in the pursuit of a vehicle being driven by defendant and appellant Shaun Layjewel Thornton.  Defendant's vehicle eventually crashed, causing injury to Jane Doe, a passenger in the vehicle.

As a result of this incident, a jury convicted defendant of multiple offenses, including one count of evading a police officer while operating a motor vehicle causing serious bodily injury (count 2; Veh. Code, § 2800.3) and one count of causing serious bodily injury while driving under the influence of a drug (count 6; Veh. Code, § 23153, subd. (f)).  The jury also found true special allegations that the commission of count 2 constituted a serious felony under Penal Code[1] section 667 (Three Strikes Law) and the commission of count 6 caused great bodily injury within the meaning of section 12022.7.  Defendant later admitted he had suffered two prior strike convictions and, as a result, the trial court sentenced defendant to a term of 25 years to life in state prison on count 6 and a concurrent term of 25 years to life in state prison on count 2.  The trial court also imposed an additional "term of four years on the 12022 enhancement"[2] but struck the punishment for the enhancement.

Defendant appeals, arguing (1) the trial court erred by failing to instruct the jury that it must find Jane Doe was not an accomplice in order to return a true finding on the

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  As we discuss further, it appears the trial court was referencing section 12022.7, subdivision (e).

special allegations related to sections 667 and 12022.7; (2) the trial court erred by failing to stay his sentence on count 2 pursuant to section 654; and (3) the abstract of judgment contains an error requiring correction. We agree with defendant that the trial court erred in instructing the jury but also conclude that only the error involving section 12022.7 was prejudicial. Given this conclusion, defendant is entitled to vacatur of his sentence and the jury's true finding with respect to the section 12022.7 sentence enhancement, rendering defendant's additional arguments moot.

## II. BACKGROUND

A. *Facts and Charges*

Defendant and Jane Doe had been in a romantic relationship since sometime in 2020. On March 11, 2021, multiple law enforcement vehicles engaged in the pursuit of a vehicle being driven by defendant. Defendant eventually crashed the vehicle into a tree, exited the vehicle, and attempted to flee on foot. After defendant fled, law enforcement officers discovered Jane Doe pinned under the dashboard of the vehicle.

As a result of this incident, defendant was charged with kidnapping (count 1; § 207, subd. (a)); causing serious bodily injury as the result of evading a police officer while operating a motor vehicle (count 2; Veh. Code, § 2800.3); failure to remain at the scene of an accident involving an injury (count 3; Veh. Code, § 20001); false imprisonment (count 4; § 236); domestic violence resulting in a traumatic condition (count 5; § 273.5, subd. (a)); causing bodily injury as the result of driving under the influence of a drug (count 6; Veh. Code, § 23153, subd. (f)); possession of prohibited drug paraphernalia (count 7;Health & Saf. Code, § 11364, subd. (a)); and resisting arrest

3

(count 8; § 148).

The second amended information also alleged that (1) defendant had suffered two prior convictions qualifying as serious felonies under section 667, subdivision (a); (2) defendant's commission of counts 1, 2, 4, and 6 constituted serious felonies pursuant to sections 667 and 1192.7, subdivision (c)(8); (3) defendant inflicted great bodily injury against a person other than an accomplice (§ 12022.7, subdivision (a)) in the commission of counts 1 and 4; and (4) defendant inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subdivision (e)) in the commission of count 6.

B. *Relevant Evidence at Trial*[3]

    1. <u>Testimony of Jane Doe</u>

Jane Doe testified that she had been in a complicated, unsteady romantic relationship with defendant since sometime in 2020. Defendant's use of illicit drugs was a concern throughout their relationship, and Jane Doe also experienced occasions in which defendant inflicted physical injuries on her. She also testified that defendant typically exhibited possessive, controlling behaviors as a result of drug consumption.

On the evening of March 10, 2021, Jane Doe rented a motel room for herself and defendant. According to Jane Doe, she rented the room to "keep [defendant] safe" because she believed defendant was in some type of trouble with his parole officer. While at the motel, she witnessed defendant consume some type of drug, which she

---

    **3** Because defendant raises only a claim of instructional error with respect to the jury's true findings regarding the special allegations in counts 2 and 6, we summarize only the evidence relevant to resolution of this issue.

4

believed to be methamphetamine. Defendant then drove Jane Doe and another friend in Jane Doe's car to a casino. However, when they arrived, defendant became angry, argued with Jane Doe, struck Jane Doe in the face, and eventually drove erratically from the scene with Jane Doe in the passenger seat of the vehicle.

When they arrived back at their motel, a law enforcement vehicle pulled up behind them. Jane Doe testified that when defendant saw the law enforcement vehicle, defendant "took off," "driving fast, trying to get away from the cop." Jane Doe admitted she remained in the vehicle but claimed she did not do anything. Eventually, defendant parked Jane Doe's vehicle in a residential area, told Jane Doe to exit the vehicle, and the two started to run away together on foot. At some point, Jane Doe decided to stop running and instead stopped to speak with the pursuing law enforcement officers while defendant continued to run. The officers spoke with Jane Doe and escorted Jane Doe back to her motel room, where Jane Doe spent the night alone.

On the morning of March 11, Jane Doe called defendant on the phone, informed defendant that she had returned to their motel room but urged defendant not to return to the motel because she had observed law enforcement officers present in the area. Defendant ignored Jane Doe, returned to the motel driving Jane Doe's car, and began yelling at Jane Doe to get in the vehicle. Jane Doe initially refused to get in the vehicle but eventually entered the vehicle and sat in the front passenger seat. She testified that she did so because she wanted to avoid making a scene and "didn't want to create a bigger situation," worrying that she could get kicked out of her apartment, become entangled with child protective services, go to jail, or be found in violation of the terms of

5

her probation.[4] Jane Doe also suggested that she believed at the time that she wanted to avoid getting into trouble because "this was a drug-and alcohol-induced toxic relationship."

Jane Doe recalled that shortly after she entered the vehicle with defendant, a law enforcement vehicle pulled up behind them and signaled for defendant to pull over. Jane Doe testified that both she and defendant began making statements expressing anxiety over the fact that a law enforcement officer was following them.[5] At first, defendant drove "normal[ly]," but he suddenly drove through a red traffic signal without stopping and began to drive faster than the speed limit. According to Jane Doe, defendant was driving in an attempt to evade police, but she did not feel that his driving was so reckless that she feared for her safety. However, Jane Doe was also impeached with prior testimony that she feared for her safety; impeached with prior testimony that she believed she was at risk of being physically injured during this time; and later gave contradictory testimony describing the situation as a "life or die situation" and claiming she was "trying to stay alive."

Jane Doe testified that, as defendant was attempting to avoid pursuing law enforcement vehicles, she did not yell or do anything to make him upset because she

_____

[4] Jane Doe referenced her fear of being dragged into an investigation by child protective services on more than one occasion.

[5] Specifically, Jane Doe testified: "I think we were both saying, 'Oh shit, oh, shit.' When a cop gets behind you, it's not . . . . [¶] . . . [¶] [I]t's not really fun." Jane Doe also testified: "I probably freaked out more than he did."

6

"was trying to do whatever [she] could to make him drive good to get us out of the situation that was at hand," and acknowledged that that might have entailed telling defendant "whatever he wanted to hear." When pressed, Jane Doe equivocated and repeatedly stated that she could not remember with sufficient detail what she might have said in the vehicle,[6] but she acknowledged that she did not tell defendant to stop driving or tell defendant how to maneuver the vehicle. On more than one occasion, Jane Doe suggested that she could not remember because she was under the influence of drugs and alcohol at the time.[7]

Eventually, defendant drove Jane Doe's vehicle over a curb and crashed into a tree. After the crash, defendant ran from the scene on foot. Jane Doe was pinned down in the vehicle and could not get out on her own. Jane Doe fractured her pelvis, requiring surgery and several months of recovery before she could walk again.

2. Testimony of Law Enforcement Officer

A law enforcement officer testified that on March 11, 2021 he was driving in a patrol vehicle when he witnessed a vehicle pull out of a motel parking lot in an unsafe manner, barely avoiding a collision with another vehicle. He began to follow the vehicle,

---

[6] Jane Doe testified that she could not "remember like verbatim what [she] said"; that she "can't say exactly what was said"; and that she couldn't "recall every single thing that was said and done."

[7] Specifically, Jane Doe testified that: "I—I can't say exactly what was said. . . . [¶] . . . [¶] [Y]ou're under drugs, alcohol. Two years ago. I couldn't tell you exactly." Jane Doe also testified that defendant might have told her to get out of the vehicle at some point, but she couldn't recall for certain because "[w]hen you're on drugs and alcohol-induced—all I was trying to do was not break my neck again."

which he described as traveling at a high rate of speed. When the officer activated his vehicle's patrol lights, the vehicle he was following did not yield and instead drove away, running through a stoplight.

The officer testified that he observed the driver of the vehicle engage in at least three traffic violations during his pursuit of the vehicle: (1) failing to stop at a traffic signal, (2) failing to stop at a stop sign, and (3) driving at an excessive unsafe speed. He lost sight of the vehicle at one point but confirmed that other law enforcement vehicles had also joined the pursuit by that time. When the officer caught up with the vehicle, he observed Jane Doe trapped inside the vehicle and defendant exiting the vehicle and running away on foot.

### 3. Forensic Evidence

After defendant was apprehended, he was transported to the Inland Valley Medical center. A blood test revealed the presence of cannabinoids, methamphetamine, and amphetamine in defendant's blood system. An expert testified that, given the level of methamphetamine, it was likely defendant had ingested it sometime in the 48 hours prior to the blood draw. The expert also explained that the stimulant effects of methamphetamine are typically experienced within the first 12 hours after ingestion but could not give a definitive opinion regarding whether defendant was impaired to the point where he could not safely drive an automobile.

## C. *Verdict and Sentence*

With respect to the special allegations that defendant's commission of counts 2 and 6 constituted serious felonies within the meaning of sections 667 and 1192.7,

8

subdivision (c)(8), and the special allegation that defendant's commission of count 6 was subject to enhancement under section 12022.7, the trial court gave a single instruction to the jury that it was required to determine whether "defendant personally inflicted great bodily injury on [Jane Doe] in the commission or attempted commission" of counts 2 and 6. The trial court defined the phrase great bodily injury but did not give any further instructions regarding these special allegations.

The jury acquitted defendant on the charges of kidnapping (count 1; § 207, subd. (a)) and false imprisonment (count 4; § 236), but it found defendant guilty on the remaining charges, including causing serious bodily injury as the result of evading a police officer while operating a motor vehicle (count 2; Veh. Code, § 2800.3) and causing bodily injury as the result of driving under the influence of a drug (Veh. Code, § 23153, subd. (f)). The jury found true a special allegation that defendant "personally inflicted great bodily injury to [Jane Doe], pursuant to Penal Code section 1192.7, subdivision (a)" in the commission of count 2, and also found true a special allegation that defendant "personally inflicted great bodily injury to [Jane Doe], pursuant to Penal Code Section 12022.7[,] subdivision (a)" in the commission of count 6. In a bifurcated proceeding, appellant admitted that he suffered two prior convictions that qualified as serious felonies within the meaning of section 667, subdivision (a).

As relevant to this appeal, the trial court sentenced defendant to a term of 25 years to life in state prison on count 6 and a concurrent term of 25 years to life in state prison on count 2. The trial court also imposed an additional "term of four years on the 12022

9

enhancement" but struck the punishment for the enhancement in the interest of justice.[8]

## III.  DISCUSSION

On appeal, defendant argues that the trial court erred when instructing the jury, requiring reversal of the jury's true findings that defendant's commission of count 2 constituted a serious felony within the meaning of sections 667 and 1192.7, subdivision (c)(8), as well as the jury's true finding that the commission of count 6 was subject to enhancement under section 12022.7.  We agree that the manner in which the jury was instructed was erroneous but also conclude that defendant was only prejudiced by the incorrect instructions pertaining to section 12022.7.  However, this error still requires vacatur of defendant's sentence and the jury's true finding on this special allegation.  As a result, we need not address the additional claims raised by defendant in this appeal.

A.  *General Legal Principles and Standard of Review*

"California's 'Three Strikes' law requires criminal sentences to be increased when a defendant has been convicted of one or more prior serious or violent felonies, or

---

[8]  With respect to the remaining counts not subject to defendant's claims on appeal, the trial court sentenced defendant to a concurrent middle term of two years on count 3 (Veh. Code, § 20001, subd. (a)), doubled to four years as a result of his prior strike convictions (§ 667, subds. (e)(1), (e)(2)(C)); a concurrent middle term of three years on count 5 (§ 273.5, subd. (a)), doubled to six years as a result of his prior strike convictions (§ 667, subds. (e)(1), (e)(2)(C)); a concurrent term of 90 days in any penal institution on count 7 (Health & Saf. Code, § 11364, subd. (a)), and another concurrent term of 90 days in any penal institution on count 8 (§ 148).  The trial court also imposed additional consecutive terms of five years in state prison for each of defendant's prior strike convictions pursuant to section 667, subdivision (a)(1) and stayed execution of the sentence on count 8, pursuant to section 654.

'strikes.' " (*People v. Saez* (2015) 237 Cal.App.4th 1177, 1193.) "Whether a crime qualifies as a serious felony is determined by section 1192.7, subdivision (c), which lists and describes dozens of qualifying crimes, including murder, robbery, kidnapping, and forcible sexual assaults." (*People v. Navarette* (2016) 4 Cal.App.5th 829, 842.) "If the current conviction falls within this group of crimes, 'then the question whether that conviction qualifies as a serious felony is entirely legal.' " (*People v. Taylor* (2004) 118 Cal.App.4th 11, 22 (*Taylor*).) However, section 1192.7, subdivision (c) also "defines other crimes as serious felonies by reference 'to conduct rather than to a specific crime' " and, "[u]nder these conduct-based definitions, a felony that does not qualify as a serious felony as a matter of law may be found to constitute a serious felony if the prosecution properly pleads and proves the facts necessary to establish the defined conduct." (*Taylor*, at p. 23.) One such conduct-based definition is "any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice." (§1192.7, subd. (c)(8); *Taylor*, at p. 23.)

Likewise, section 12022.7 provides for an enhancement of a criminal defendant's sentence based upon " '*the circumstances of the crime*' " with a " 'focus on what the defendant did when the current offense was committed.' " (*People v. Ahmed* (2011) 53 Cal.4th 156, 161.) Specifically, section 12022.7 provides for an enhanced sentence when a defendant causes great bodily injury in the commission of a crime under a variety of specific circumstances. (§ 12022.7; *Ahmed*, at p. 164 ["numerous great bodily-injury enhancements exist" under § 12022.7].) These circumstances include when the defendant causes great bodily injury to a person other than an accomplice (§ 12022.7,

11

subd. (a)) and when the defendant inflicts great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)).

Generally, a criminal defendant has a " 'right, under the Fifth, Sixth, and Fourteenth Amendments [to the United States Constitution], to a jury finding beyond a reasonable doubt of any fact used to increase the sentence for a felony conviction beyond the maximum term permitted by conviction of the charged offense alone.' " (*People v. Romero* (2019) 44 Cal.App.5th 381, 388; *People v. Nguyen* (2009) 46 Cal.4th 1007, 1010; *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.) Thus, " '[*o*]*ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " (*Romero*, at p. 388.) As a result, "[a] trial court has a sua sponte duty to instruct the jury on the essential elements of a special circumstance allegation . . . as well as the elements of a charged offense." (*People v. Mil* (2012) 53 Cal.4th 400, 409; *People v. Serrano* (2022) 77 Cal.App.5th 902, 908.) And the failure to object at trial does not forfeit a claim of instructional error on this basis. (*People v. Quinonez* (2020) 46 Cal.App.5th 457, 463; *People v. Bay* (2019) 40 Cal.App.5th 126, 137.)

"The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law [citations] and also whether instructions effectively direct a finding adverse to a defendant by removing an issue from the jury's consideration." (*People v. Posey* (2004) 32 Cal.4th 193, 218; *People v. Lua* (2017) 10 Cal.App.5th 1004, 1013.) "When jury instructions are deficient for omitting an element of an offense, they implicate the defendant's federal constitutional rights, and we

review for harmless error under the strict standard of *Chapman v. California* (1967) 386 U.S. 18. . . . Under the *Chapman* standard, reversal is required unless 'it appears beyond a reasonable doubt that the error did not contribute to th[e] jury's verdict.' " (*People v. Sek* (2022) 74 Cal.App.5th 657, 668; *People v. Sengpadychith* (2001) 26 Cal.4th 316, 326 [*Chapman* standard applies where failure to submit factual issue to jury results in increased sentence].)

B. *The Three Strikes Law Instructions Were Erroneous*, *but Not Prejudicial*

    1. Error

Here, the prosecution sought to prove that defendant's commission of counts 2 and 6 constituted serious felonies within the meaning of section 1192.7, subdivision (c)(8) in order to trigger the Three Strikes Law's alternate sentencing scheme.[9] Our Supreme Court has unambiguously held that a criminal defendant has the right to a jury determination regarding whether the commission of an offense constitutes a serious felony within the meaning section 1192.7, subdivision (c)(8). (*In re Cabrera* (2023) 14 Cal.5th 476, 491-492.) As defendant correctly points out, whether an offense constitutes a serious felony under section 1192.7, subdivision (c)(8) requires two factual determinations: (1) that defendant personally inflicts great bodily injury in the commission of a felony and (2) that the injury was inflicted on someone "other than an

---

[9] The underlying offenses of operating a motor vehicle with intent to evade a pursuing police officer causing serious bodily injury to another (count 2; Veh. Code, § 2800.3, subd. (a)) as well as driving under the influence of a drug and concurrently doing an act forbidden by law causing bodily injury (count 6; § Veh. Code, 23153, subd. (f)) are not listed as serious felonies per se under section 1192.7, subdivision (c).

13

accomplice . . . ." (§ 1192.7, subd. (c)(8).)

In this case, the record makes clear that the trial court instructed the jury that it was required to determine whether defendant inflicted great bodily injury on Jane Doe during the commission of the underlying offenses, but the trial court never instructed the jury that it was also required to determine that Jane Doe was not an accomplice. Thus, the instructions effectively removed the accomplice element from the jury, resolving the factual issue in favor of the prosecution as a matter of law. Because this deprived defendant of his constitutional right to have a jury determine that the prosecution met its burden to prove an essential fact beyond a reasonable doubt, it was error to instruct the jury in this manner.[10]

The People suggest that the trial court did not err because, generally, a trial court is not required to give instructions that are not supported by evidence in the record and there was no evidence to support the conclusion that Jane Doe was an accomplice in the

_____

[10] While neither party has raised this point on appeal, we observe that the weight of authority clearly places the burden on the prosecution to establish that the injured party is "other than an accomplice" for purposes of section 1192.7, subdivision (c)(8). While generally, "California law permits placing the burden to prove the accomplice status of a witness on a defendant" because "whether a witness is an accomplice is collateral to the defendant's guilt or innocence," where the status of an uncharged individual as an accomplice constitutes an element of the underlying offense, "the prosecution must bear the burden to prove the accomplice's status beyond a reasonable doubt." (*People v. Martinez* (2019) 34 Cal.App.5th 721, 729.) With respect to section 1192.7, subdivision (c)(8), the status of the victim as someone other than an accomplice is not collateral but instead a necessary, factual prerequisite to the application of the statutory provision. (§ 1192.7, subd. (c)(8).) Thus, it is a fact upon which the prosecution must bear the burden of proof at trial.

commission of counts 2 or 6.[11]  However, as our Supreme Court has explained, the "requirement—that there be evidence supporting a finding for the defendant— . . . does not govern the trial court's duty to instruct on the essential elements of the crime." (*People v. Flood* (1998) 18 Cal.4th 470, 481.)  This is because "under the due process guarantees of both the California and United States Constitutions, the prosecution has the burden of proving beyond a reasonable doubt each essential element of the crime [citation], [and] the jury may find for the defendant even if the only evidence regarding an element of the crime favors the prosecution, but that evidence nevertheless falls short of proving the element beyond a reasonable doubt." (*Flood*, at p. 481.)  "[T]he existence of evidence from which the jury could find for the defendant is relevant in determining whether the instructional error is *prejudicial*, but the due process requirement . . . that the trial court give instructions regarding—and the jury determine—all essential elements of the offense does not depend upon the existence of evidence affirmatively favoring the defendant." (*Ibid.*)

Thus, regardless of whether there was evidence to support a finding that Jane Doe was an accomplice, the trial court was required to instruct the jury on all of the essential elements of the offenses and enhancements for which defendant was charged.  The failure to submit an essential element required to invoke the alternate sentencing scheme of the

---

[11]  We observe that most of the People's arguments regarding instructional error and prejudice are unpersuasive, as the People focus exclusively on whether the failure to give a cautionary instruction regarding the need to corroborate accomplice testimony was erroneous.  However, this was not a claim raised in the opening brief, and it is unclear why the People devoted considerable time in the respondent's brief addressing this issue.

Three Strikes Law for the jury to determine was error. However, as we explain below, we conclude the error was not prejudicial.

2. Prejudice

In order to assess prejudice, we must " 'conduct a thorough examination of the record,' " and " '[i]f . . . at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error[,] it should not find the error harmless.' " (*Mil*, *supra*, 53 Cal.4th at p. 417.) "On the other hand, instructional error is harmless 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence.' " (*Ibid.*) Ultimately, "our task . . . is to determine 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' " (*Ibid.*; *People v. Atkins* (2019) 31 Cal.App.5th 963, 981 [" ' "[W]here the defendant contested the omitted element and raised evidence sufficient to support a contrary finding," ' " a reviewing court should not find the error harmless.].) Thus, we must determine whether a reasonable jury could have found Jane Doe was an accomplice to defendant's commission of count 2 (Veh. Code, § 2800.3, subd. (a)) and count 6 (Veh. Code, § 23153, subdivision (f)). We conclude that the evidence in this case was insufficient to support a finding in favor of defendant.

Generally, a violation of section 2800.3, subdivision (a) occurs when a defendant operates a motor vehicle with the intent to evade, willfully flee, or elude a pursuing peace officer's motor vehicle and causes serious bodily injury to any person while doing so. (Veh. Code, §§ 2800.3, subd. (a), 2800.1, subd. (a).) A violation of Vehicle Code section

16

23153, subdivision (f) occurs when a defendant drives under the influence of any drug, concurrently performs some other act forbidden by law, and causes bodily injury to another person as a result. (Veh. Code, § 23153, subd. (f).)

To be considered an accomplice to these offenses, there must be sufficient evidence to show that Jane Doe " 'is liable to [the] prosecution for the identical offense charged against the defendant . . . . ' " (*People v. Tewksbury* (1976) 15 Cal.3d 953, 960; *People v. Anderson* (2018) 5 Cal.5th 372, 412-413.) Accomplice liability " 'encompasses all principals to the crime . . . , including aiders and abettors and coconspirators.' " (*People v. Valdez* (2012) 55 Cal.4th 82, 145-146.) To be considered a principal to the crime, there must be evidence to show that Jane Doe "directly commit[ted] the act constituting the offense, or aid[ed] and abet[ted] in its commission, or . . . advised and encouraged its commission . . . ." (§ 31.) To be considered an aider or abettor, there must be evidence to show that Jane Doe "assist[ed] the direct perpetrator by aid or encouragement, with knowledge of the perpetrator's criminal intent and with the intent to help him carry out the offense." (*People v. Miranda* (2011) 192 Cal.App.4th 398, 407.)

Here, there was no evidence that Jane Doe operated the vehicle at any time during defendant's commission of counts 2 and 6 and, as a result, she could not have been considered a direct perpetrator of either offense. Additionally, while there was some evidence to suggest that Jane Doe may have had a motive to evade law enforcement at

17

the time,[12] there is no evidence to suggest Jane Doe took any act to assist defendant or made any statements that would have constituted aid or encouragement to defendant during the commission of the offenses.[13] Because the record contains no evidence from which a jury could infer that Jane Doe acted in a manner that provided aid or encouragement to defendant in the commission of the offenses, a reasonably jury could not have concluded that Jane Doe was an accomplice and defendant was not prejudiced by the failure to submit that issue to the jury. And absent prejudice, the trial court's instructional error does not warrant reversal.

C. *The Great Bodily Injury Enhancement Instructions Were Prejudicially Erroneous*

Defendant also contends that the trial court erred by failing to instruct the jury to determine whether Jane Doe was an accomplice with respect to the great bodily injury enhancement under section 12022.7. We conclude that the trial court erred, though our reasoning differs from defendant's reasoning.

---

[12] Jane Doe stated that she felt the need to avoid the police so that she would not be found in violation of her probation, but never explained what would have caused her to be in violation of probation.

[13] We recognize that factors which can support a finding of aiding and abetting include: (1) presence at the scene of the crime and failure to prevent it; (2) companionship with the direct perpetrator; (3) conduct before and after the offense; and (4) flight following the offense. (*People v. Miranda*, *supra*, 192 Cal.App.4th at p. 407; *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 599.) However, none of these factors seem particularly relevant here where there is no evidence of any act, omission or words by Jane Doe that could be construed as giving aid or encouragement to defendant with knowledge of defendant's criminal intent or intent to assist defendant in carrying out the offenses.

18

It is true that section 12022.7, subdivision (a), provides a sentencing enhancement for "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony . . . ." (§ 12022.7, subd. (a).) However, both defendant and the People overlook the fact that this was not the enhancement alleged in the operative pleading and, more importantly, this was not the enhancement imposed by the trial court at the time of sentencing.[14] Instead, the enhancement alleged in the second amended information was that defendant personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)) in the commission of count 6.[15] Commensurate with this understanding, the sentence imposed by the trial court was the "middle term of four years," reflecting a violation of section 12022.7,

---

[14] This misunderstanding apparently stems from the fact that the verdict form states that the jury found true the allegation that defendant personally inflicted great bodily injury to Jane Doe "pursuant to Penal Code Section 12022.7, subdivision (a)." However, the insertion of this phrase into the verdict form was meaningless because the record shows that the jury was never given any instructions referencing section 12022.7, subdivision (a) and, as a result, would not have known what this phrase referenced. Instead, the jury was instructed only that the prosecution had the burden to prove that defendant inflicted great bodily injury on Jane Doe in the commission of count 6, without requesting the jury find the additional facts necessary to implicate either section 12022.7, subdivision (a) or section 12022.7, subdivision (e).

[15] Specifically, the amended information alleged with respect to count 6: "It is further alleged that in the commission of the above offense under circumstances involving domestic violence that said defendant . . . personally inflicted great bodily injury upon JANE DOE . . . , not an accomplice to the above offense, within the meaning of Penal Code sections 12022.7, subdivision (e) and 1192.7, subdivision (c)(8) [3/4/5 prison]."

subdivision (e).[16]

Thus, in our view, the error with respect to the great bodily injury enhancement was not the failure to instruct the jury to determine whether Jane Doe was an accomplice. Unlike section 12022.7, subdivision (a), subdivision (e) does not require that the injured person be someone "other than an accomplice." Instead, section 12022.7, subdivision (e) requires the jury to find that defendant "personally inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony . . . ." (§ 12022.7, subd. (e).) Therefore, the instructional error with respect to this enhancement was the failure to instruct the jury that it must find the prosecution proved the commission of count 6 occurred under circumstances involving domestic violence in order to return a true finding on this special allegation.

Nor was this error harmless under the circumstances. While Jane Doe offered testimony to suggest that her relationship with defendant had included interactions that could be characterized as domestic violence, she also testified that on the morning of the incident, she did not enter the vehicle with defendant out of fear but as a result of her own, independent motives to avoid drawing the attention of law enforcement. Thus, the evidence on this point was conflicting, such that a reasonable jury could have concluded that defendant's specific actions with respect to evading law enforcement and driving

---

[16] Section 12022.7, subdivision (a) enhances a defendant's sentence with an additional consecutive term of imprisonment for three years, whereas subdivision (e) enhances a defendant's sentence with an additional, consecutive term of imprisonment for three, four, or five years. (§ 12022.7, subds. (a), (e).)

while under the influence of drugs did not involve domestic violence. Because the evidence at trial could have permitted the jury to find in favor of defendant on this issue, the failure to instruct the jury on this element of the enhancement was not harmless, and defendant's great bodily injury enhancement on count 6 must be vacated.

In supplemental briefing, both defendant and the People argue that the record should be construed as an informal or oral amendment of the pleadings to include an enhancement under section 12022.7, subdivision (a), although they disagree as to the impact of such amendment in this appeal.[17] We disagree that any amendment of the pleading occurred in this case.

We observe that the California Supreme Court has rejected similar arguments under nearly identical facts in *People v. Anderson* (2020) 9 Cal.5th 946. In *Anderson*, the People failed to formally request amendment of the pleading to add firearm enhancements, but "the jury instructions and verdict forms nonetheless asked the jury to return findings that would support these enhancements." (*Id.* at p. 958.) Our Supreme

---

[17] Defendant contends that the trial court should be deemed to have granted permission to amend the pleading to include an enhancement pursuant to section 12022.7, subdivision (a) and that the jury's verdict should be interpreted to apply to this enhancement, but that reversal is required because this was not an appropriate method of amending the pleading to include an uncharged enhancement. In contrast, the People contend that the trial court should be deemed to have granted an oral request to amend the pleading to include an enhancement pursuant to section 12022.7, subdivision (a); defendant forfeited any challenge to the amendment; the jury's finding should be interpreted as a true finding with respect to section 12022.7, subdivision (a); and the appropriate remedy is to strike the enhancement imposed pursuant to section 12022.7, subdivision (e) and order that the trial court impose the enhancement pursuant to section 12022.7, subdivision (a).

21

Court concluded that, despite the giving of instructions on an unpled enhancement, "no informal amendment of the information occurred." (*Id.* at p. 960.) In reaching this conclusion, it explained: "there was no written amendment to the information. . . . [T]here was no hearing in open court where the prosecution asked to make an oral amendment to the information . . . , nor was [defendant] asked if he consented to the amendment, nor did the trial court ever grant such a request. [¶] All we are left with . . . is counsel's failure to object to certain jury instructions and verdict forms . . . . For all the record shows, the drafting of the instructions and verdict forms may have simply been a mistake the parties did not manage to catch before it was too late." (*Id.* at p. 960.)

In our view, the reasoning in *Anderson* controls here. The record in this case contains no request to amend the information—whether in writing or orally—and does not suggest the trial court ever ruled on such a request.[18] The fact that one of the instructions given to the jury contained a brief reference to "section 12022.7, subdivision

---

[18] While the record shows that during a jury instruction conference, the prosecutor expressed a desire to instruct on an enhancement pursuant to section 12022.7, subdivision (a) in place of the enhancement alleged pursuant to section 12022.7, subdivision (e); defense counsel objected to the request and asked for time to research the issue. In response, the trial court did not rule on the request and stated "[w]e can deal with that as a later issue if that's the problem"; the prosecutor never renewed the request. There is no indication in the record that the trial court ever arraigned defendant on an amended information; the instructions ultimately given omitted any reference to any of the subdivisions of section 12022.7, and section 12022.7, subdivision (a) was only mentioned in the verdict form, without any explanation to the jury regarding what "subdivision (a)" actually provided. Similar to *Anderson*, "[f]or all the record shows, the drafting of the instructions and verdict forms may have simply been a mistake the parties did not manage to catch before it was too late." (*Anderson*, *supra*, 9 Cal.5th at p. 960.)

(a)" is not sufficient for this court to conclude that the trial court granted a request to amend the information or intended to instruct on that enhancement. On appeal, we presume the trial court properly performs its duties absent evidence to the contrary (*People v. Gonzalez* (2021) 12 Cal.5th 367, 394; Evid. Code, § 664), and we indulge presumptions in favor of the sufficiency of the judgment (*People v. Chubbuck* (2019) 43 Cal.App.5th 1, 1117). The trial court's duty in this case was "to instruct on all the elements of the *charged* offenses and enhancements" (*People v. Williams* (2009) 170 Cal.App.4th 587, 638-639, italics added), and we will presume the trial court intended to fulfill this duty absent a clear indication in the record of a contrary intent. As such, we decline the parties' invitation to construe the record as an attempt by the trial court to instruct on an unpled enhancement. Instead, we presume the trial court intended to instruct the jury on the enhancements actually alleged in the information but failed to correctly do so.

Because this issue impacts only the imposition of a sentence enhancement and not defendant's conviction on the underlying offense, the proper remedy is to vacate defendant's sentence, vacate the jury's true findings with respect to section 12022.7, subdivision (e), and remand the matter for further proceedings. Upon remand, the prosecution may elect to retry the special allegations pursuant to sections 12022.7, subdivision (e). (*People v. Wilson* (2023) 14 Cal.5th 839, 855 [" '[A]s a general rule, errors other than insufficiency of evidence do not preclude retrial following reversal of conviction . . . . ' "]). And after such retrial, or in the event the prosecution elects not to retry defendant, the trial court should resentence defendant accordingly.

D. *It is Unnecessary To Resolve the Remaining Issues Raised on Appeal*

Defendant also claims that the trial court erred by failing to stay his sentence on count 2 pursuant to section 654, and that the abstract of judgment contains an error requiring correction. However, because we order defendant's sentence vacated and the matter remanded for further proceedings, which will eventually result in resentencing and entry of a new judgment, these issues are moot and it is unnecessary for us to address them at this time.

## IV. DISPOSITION

The true finding that defendant caused great bodily injury in violation of section 12022.7 and defendant's sentence are reversed. The matter is remanded for further proceedings. Upon remand, the trial court is directed to give the People an opportunity to retry the special allegation pertaining to section 12022.7, subdivision (e). If the People elect not to retry defendant, or at the conclusion of any retrial, the trial court shall conduct a full resentencing where it will have discretion to reexamine all aspects of defendant's sentence. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

MILLER
Acting P. J.

RAPHAEL
J.

24